IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 17, 2019

## JOSEPH RIVERA v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 110702    Steven Wayne Sword, Judge**

**_____**

### No. E2019-00798-CCA-R3-PC

**_____**

The Petitioner, Joseph Rivera, appeals the partial denial of his petition for post-conviction relief.  He argues the he received ineffective assistance of counsel because counsel's advice to testify at trial was deficient and harmful to his trial strategy.  After review, we affirm the denial of the petition.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Joseph Rivera.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charme P. Allen, District Attorney General; and Kevin J. Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The Petitioner was convicted of murder during the attempt to perpetrate a kidnapping, murder during the attempt to perpetrate a burglary, second-degree murder, especially aggravated burglary, and aggravated assault and sentenced to an effective term of life imprisonment.  State v. Joseph Anthony Rivera, No. E2014-01832-CCA-R3-CD, 2016 WL 2642635, at *1 (Tenn. Crim. App. May 6, 2016), perm. app. denied (Tenn. Sept. 22, 2016).  His convictions were affirmed on direct appeal, and the Tennessee Supreme Court denied his application for permission to appeal.  Id.

The State's proof at trial established that the Petitioner killed the victim, his estranged wife, by strangling her with his hands and a vacuum cleaner cord.  On the day of

the murder, witnesses observed the Petitioner and the victim in an altercation outside her apartment and saw him drag her inside and close and lock the door. The Petitioner was later observed fleeing the scene through the victim's backyard and over a fence, then driving away in a blue truck. The victim's body was discovered on her living room floor with a vacuum cleaner cord wrapped around her neck. The Petitioner's former spouse testified that the Petitioner called and told her that he had killed the victim because she had threatened to kill their children. The police located the blue truck in a nearby town, and a pursuit ensued until the truck crashed in a ditch. The Petitioner's DNA was found on fingernail clippings taken from the victim. The Petitioner admitted to the police to having slapped and punched the victim during the time period in question, but he did not admit to killing her.

The Petitioner testified at trial. In his testimony, the Petitioner recounted the physical and sexual abuse he suffered as a child; his lack of education; his physical and mental health history; his prior marriage; and his marriage to the victim, including their marital problems and counseling, her relationship with his children, and her physical abuse and infidelity. The Petitioner also recounted the events surrounding the murder, but he claimed to only recall intermittent things and denied any intent to harm the victim.

The Petitioner filed a pro se petition for post-conviction relief in which he raised numerous allegations of ineffective assistance of counsel, as well as claims of a failure to preserve evidence by the police and abuse of discretion by the trial court. In an amended petition filed by appointed counsel, the Petitioner specified that trial counsel rendered ineffective assistance for advising him that he should testify at trial and failing to challenge his conviction for especially aggravated burglary.

The post-conviction court conducted an evidentiary hearing, at which counsel testified that he had more than twenty years' experience in criminal defense and had handled a significant number of homicide cases. Counsel recalled that he and the Petitioner discussed trial strategy after reviewing the discovery from the State. Counsel noted that there was a wealth of incriminating evidence against the Petitioner that essentially invalidated any claim that the Petitioner did not commit the murder. Therefore, they decided to pursue a diminished capacity defense given the Petitioner's abusive family history, lack of education, and other considerations. Counsel was aware that there were inconsistencies between what the Petitioner told him and what the Petitioner had said to other witnesses and the police, but counsel believed the inconsistencies would support their theory of diminished capacity. Counsel discussed the decision about whether to testify with the Petitioner and ultimately advised him to testify because there were certain aspects of the Petitioner's history that were best relayed to the jury through the Petitioner. Counsel said that he and the Petitioner had a good working relationship, and they spent considerable time preparing for his testimony. Counsel stated that nothing came out during the State's

proof at trial that changed his opinion about the necessity of the Petitioner's testifying. Regardless, counsel was sure that the Petitioner understood that the decision of whether to testify was his personal decision.

Counsel said that the Petitioner ultimately testified at trial, and it went reasonably close to what he expected. There were a few problem areas in the Petitioner's testimony, but counsel felt that overall it supported their theory of diminished capacity. Even with the benefit of hindsight, counsel believed that the Petitioner's testifying was sound trial strategy.

Counsel acknowledged that he did not consider challenging the fact that the State had prosecuted the Petitioner for especially aggravated burglary based on the same conduct as the felony murder offenses. He explained that "[t]here were much more serious fish to fry, and that burglary issue just didn't rise to the top of my attention at that point."

The Petitioner testified that he and counsel discussed what the evidence would likely be in his case and the best course of trial strategy. Counsel advised him to testify as part of that trial strategy, and the Petitioner trusted counsel as his lawyer. However, the Petitioner acknowledged that the decision to testify was ultimately his decision.

The post-conviction court denied relief in part and granted relief in part. The post-conviction court found that trial counsel's "advice to testify was reasonable in light of the facts of the case and based upon a sound defense strategy." However, the court determined that trial counsel rendered deficient performance that "slightly prejudiced" the case for failing to raise the issue that the especially aggravated burglary and felony murder charges were based on the same conduct. To remedy the issue, the post-conviction court modified the Petitioner's especially aggravated burglary conviction to aggravated burglary and reduced the sentence for that offense to six years. The Petitioner appealed.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel because trial counsel's advice to testify at trial was deficient and harmful to his trial strategy.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence

preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

- 4 -

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

The Petitioner asserts that he received ineffective assistance of counsel because trial counsel's advice to testify at trial was deficient and harmful, rather than helpful, to his trial strategy. At the evidentiary hearing, counsel testified that he was aware that there were inconsistencies between what the Petitioner told him and what the Petitioner had said to other witnesses and the police, but he believed the inconsistencies would support their defense strategy of diminished capacity. Counsel and the Petitioner discussed whether the Petitioner should testify, and counsel ultimately advised the Petitioner to testify because there were certain aspects of the Petitioner's history that were best relayed to the jury through the Petitioner. However, counsel was sure that the Petitioner understood that the decision of whether to testify was his personal decision. Counsel said that he and the Petitioner spent a considerable amount of time preparing for the Petitioner's testimony, and that nothing came out during the State's proof that changed counsel's opinion about the necessity of the Petitioner testifying.

In addressing this issue, the post-conviction court found as follows:

[Counsel] developed a sound defense strategy logically connected to the proof that was developed during the investigation of the case. The presentation of the defense to the jury was well thought-out and skillfully presented. It appears that the jury partially agreed with the defense by finding the [Petitioner] guilty of the lesser included offense of second-degree murder rather than premeditated first-degree murder. The jury also acquitted him on other charges.

The trial record and proof during the post-conviction hearing indicate that the Petitioner understood the decision on whether or not to testify was completely his. The court finds he made the decision of his own free will and that the advice by his attorney was simply that, advice. Furthermore, the court finds that the advice to testify was reasonable in light of the facts of the case and based upon a sound defense strategy. Counsel was not deficient in his performance.

We need not address whether the Petitioner suffered prejudice because the Petitioner has failed to prove that counsel rendered deficient performance. The record shows that counsel, an attorney with more than twenty years' experience in criminal defense,

developed a trial strategy to challenge the Petitioner's mental capacity in light of the overwhelming evidence of the Petitioner's guilt. Counsel's advice to the Petitioner to testify was an informed and sound tactical decision based on adequate preparation. Counsel's performance was "within the range of competence demanded of attorneys in criminal cases," <u>see</u> <u>Henley</u>, 960 S.W.2d 572, 579 (Tenn. 1997), and did not "fall below an objective standard of reasonableness under prevailing professional norms." <u>Goad</u>, 938 S.W.2d at 369. The Petitioner is not entitled to relief.

## **<u>CONCLUSION</u>**

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
ALAN E. GLENN, JUDGE